1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11    DARRIN L. S.,                              Case No.:  21cv385-KSC

12                          Plaintiff,
                                                 **ORDER GRANTING PLAINTIFF'S**
13    v.                                         **MOTION FOR SUMMARY**
                                                 **JUDGMENT [Doc. No. 21];**
14    KILOLO KIJAKAZI, Acting                    **DENYING DEFENDANT'S CROSS-**
      Commissioner of Social Security,           **MOTION FOR SUMMARY**
15                                               **JUDGMENT [Doc. No. 24]; AND**
                            Defendant.           **REMANDING FOR FURTHER**
16                                               **ADMINISTRATIVE PROCEEDINGS**
17

18

19         Plaintiff Darrin L. S. seeks review of the Acting Commissioner of Social Security's

20   denial of his application for disability benefits. Doc. No. 8. Currently before the Court is

21   plaintiff's Motion for Summary Judgment [Doc. No. 21], defendant's Opposition and

22   Cross-Motion for Summary Judgment [Doc. No. 24], and plaintiff's Reply [Doc. No. 25].

23   For the reasons outlined below, the Court GRANTS plaintiff's Motion for Summary

24   Judgment, DENIES defendant's Cross-Motion for Summary Judgment, and REMANDS

25   the case for further administrative proceedings.

26   **I.      _Background and Procedural History._**

27         Plaintiff filed an application for Social Security disability insurance benefits on

28   February 4, 2019, alleging he was disabled as of February 1, 2017, and had stopped

working because of his medical condition. AR 143-153.[1] The Social Security Administration ("SSA") denied his application initially and on reconsideration. Doc. Nos. 83-86, 90-94. Plaintiff requested and received an Administrative Law Judge ("ALJ") hearing. AR 33-53, 97-99. The ALJ found plaintiff not disabled. AR 12-32. The Appeals Counsel denied plaintiff's request for review [AR 1-6] and this case followed [Doc. No. 1].

## II.      *The ALJ's Decision.*

The ALJ followed the Commissioner's five-step sequential evaluation process for determining whether an applicant is disabled.  20 C.F.R. § 404.1520(a).

At step one the ALJ found plaintiff had "not engaged in substantial gainful activity since January 31, 2019." AR 17.

At step two, the ALJ found plaintiff had the following medically determinable severe impairments: lumbar degenerative disc disease, history of hernia repair, migraine headaches, history of scoliosis of the cervical and thoracic spine, and depressive disorder. *Id.* The ALJ also concluded that plaintiff's hypertension, hyperlipidemia, history of right arm fracture, history of left shoulder fracture, and history of tremors are non-severe because they do not cause more than a minimal limitation in his ability to perform basic work activities. AR 18-19.

At step three, the ALJ concluded that plaintiff's impairments, whether considered alone or in combination, do not meet or equal any of the relevant listings in the SSA's Listing of Impairments. AR 19-20.

---

[1] "AR" refers to the Administrative Record lodged on October 5, 2022. Doc. No. 15. The Court's citations to the AR use the page references on the original document rather than the page numbers designation by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

21cv385-KSC

1    Before proceeding to step four, the ALJ determined plaintiff had the residual

2  functional capacity ("RFC") to perform light work[2] except he is able to "lift and carry 20

3  pounds occasionally and ten pounds frequently; stand[] and/or walk[] for six hours in an

4  eight-hour workday; sit[] for six hours in an eight-hour workday; [] occasionally climb

5  ropes, ladders, or scaffolds and ramps and stairs; [] occasionally balance, stoop, kneel,

6  crouch, and crawl; [] frequently reach overhead on the right; frequently [use] gross

7  manipulation on the right; [] only occasionally use hand tools requiring torqueing motion

8  or pressure; [] understand, remember, and carry out simple instructions and tasks; [] [and]

9  respond appropriately to supervisors and coworkers in a task oriented setting where contact

10  with others is casual and infrequent." AR 20-21. However, he "should avoid concentrated

11  exposure to loud noise and vibration. . . [and] should not work in a setting which includes

12  constant or regular contact with the general public or more than infrequent handling of

13  customer complaints." *Id.*

14    At step four, the ALJ concluded plaintiff had no past relevant work. AR 26.

15    At step five, the ALJ accepted Vocational Expert ("VE") opinion testimony and

16  concluded "jobs . . . existed in significant numbers in the national economy that [plaintiff]

17  could perform," including a Raw Shellfish Preparer; a Housekeeper/ Cleaner; and a

18  Routing Clerk. AR 27.

19  //

20  //

21

22

---

23  [2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very
24  little, a job is in this category when it requires a good deal of walking or standing, or when
it involves sitting most of the time with some pushing and pulling of arm or leg controls.
25  To be considered capable of performing a full or wide range of light work, you must have
the ability to do substantially all these activities. If someone can do light work, we
26  determine that he or she can also do sedentary work, unless there are additional limiting
27  factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R.
§ 404.1567(b).
28

1

2
### III.   *Standard of Review*.

The Court reviews the ALJ's decision to determine whether the ALJ applied the

3 proper legal standards and whether the decision is supported by substantial evidence.

4 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).

5 Substantial evidence is "such relevant evidence as a reasonable mind might accept as

6 adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012)

7 (quotations omitted), *superseded by regulation on other grounds as stated in Thomas v.*

8 *Saul*, 830 Fed. App's 196, 198 (9th Cir. 2020). It is "more than a mere scintilla but, less

9 than a preponderance . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting

10 *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

11      The Court "must consider the entire record as a whole and may not affirm simply by

12 isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154,

13 1160 (9th Cir. 2014) (internal quotation omitted). The Court may not impose its own

14 reasoning to affirm the ALJ's decision. *See Garrison*, 759 F.3d at 1010. "[I]f evidence

15 exists to support more than one rational interpretation, [then the Court] must defer to the

16 [SSA]'s decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

17 2004) (citing *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). The Court

18 will not reverse the ALJ's decision if any error is harmless. *Marsh v. Colvin*, 792 F.3d 1170,

19 1173 (2015) ("ALJ errors in social security cases are harmless if they are inconsequential

20 to the ultimate nondisability determination and that a reviewing court cannot consider [an]

21 error harmless unless it can confidently conclude that no reasonable ALJ . . . could have

22 reached a different disability determination.") (internal citations and quotations omitted).

23
### IV.   *Discussion*

24      Plaintiff argues "[t]he ALJ failed to properly consider the consultative examiner's

25 opinion." Doc. No. 21-1 at 4-8. Plaintiff contends board certified psychiatrist Dr. Jaga

26 Nath Glassman's "opinion is supported and consistent with the record" and "[t]he ALJ's

27 reasons for finding otherwise are not supported by substantial evidence." *Id.* at 8.

28

1      Plaintiff filed his claim after March 27, 2017; therefore, the 2017 amendments

2 governing medical opinions apply. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).

3 Under those amendments, the SSA "will not defer or give any specific evidentiary weight,

4 including controlling weight, to any medical opinion(s) or prior administrative medical

5 finding(s), including those from . . . medical sources." 20 C.F.R. § 404.1520c(a). Instead,

6 all medical opinions are evaluated based on supportability, consistency, relationship with

7 the claimant, specialization, and other factors. *Id.* § 404.1520c(c). The SSA is required to

8 explain how it considered the most important factors, supportability and consistency, but

9 is not required to explain how it considered the other factors. *Id.* § 404.1520c(b)(2). "Even

10 under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion

11 as unsupported or inconsistent without providing an explanation supported by substantial

12 evidence." *Woods*, 32 F.4th at 792.

13      On June 23, 2019, Dr. Glassman, made a psychiatric disability evaluation based on

14 his mental status examination of plaintiff and review of plaintiff's La Maestra Community

15 Health Center records. AR 323-27. Dr. Glassman noted "during the examination [plaintiff]

16 presented as extremely depressed-appearing, with a sense of underlying rage and

17 volatility." AR 327. Dr. Glassman further observed:

> 18 [plaintiff] was very poorly engaged . . . completely avoided eye contact, [and]
> 19 spoke in a soft monotone, giving very brief responses. He was very agitated,
> tense, with a sense of underlying rage and potential volatility, and it was scary
> 20 to be with him. I felt I had to "tread very carefully," there were marked signs
> 21 of psychomotor agitation. He rocked back and forth in an agitated manner
> throughout the interview. He clenched his fists at all times. He twisted
> 22 Kleenex into tight wads. I thought he might be psychotic. There was an odd
> 23 quality, with some odd and poor relatedness.
>
> 24 . . .
>
> 25 Cognitively, he presented as of possible low-average intellectual functioning.
>
> 26 . . .

1
2
3

He stated he has been depressed since his wife was murdered in his 20s, and apparently has become more severely depressed over the last two to three years, since the injury to his right arm.

4      AR 326-27.

5          Dr. Glassman's diagnosis was: severe major depression; probably somatic symptom

6      disorder; history of adolescent conduct problems; possible dysfunctional personality

7      features; musculoskeletal/orthopedic problems; and a GAF of 45, noting "[plaintiff's] level

8      of functioning appears to be quite impaired." AR 327. Dr. Glass then opined plaintiff had

9      marked impairment in his capacity to: "get along adequately with others and . . . behave in

10     a socially appropriate manner; . . . understand and follow even simple instructions

11     consistently; . . . maintain concentration, persistence, and pace, and to adapt to changes and

12     stresses in the workplace setting. He is not currently in any kind of psychiatric or mental

13     health treatment, which could help decrease symptoms and improve his functioning." *Id.*

14         The ALJ concluded:

15
16
17
18
19
20
21
22

Dr. Glassman's opinion was unpersuasive because it was inconsistent with and not supported by the objective medical evidence.  Dr. Glassman's opinion appeared to rely almost purely on the claimant's presentation during the evaluation.  The claimant's effort at both consultative evaluations was questionable and his intimidating presentation at the evaluation with Dr. Glassman contrasted sharply with his presentation with his treating medical providers.  The claimant has not sought any significant mental health treatment since February 2019, and he was negative for depression in February 2020.  The objective medical evidence did not support marked limitations.  The claimant's mental and social limitations would not preclude the performance of all competitive work.

23     AR 26.

24         The ALJ's conclusion that Dr. Glassman's opinion was "not supported by the

25     objective medical evidence. . . [and] appeared to rely almost purely on [plaintiff's]

26     presentation during the evaluation," is not supported by substantial evidence. Dr.

27     Grossman's clinical interview and mental status examination of plaintiff are objective

28     measures for evaluating psychiatric conditions like depressive disorder. *See Buck v.*

1  *Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (finding ALJ erred in rejecting psychiatric

2  opinion and holding these "clinical interview[s] and ... mental status evaluation[s] ... are

3  objective measures and cannot be discounted as a 'self-report.'"); *Mickayla Lynne Marie*

4  *P. v. Comm'r of Soc. Sec.*, No. 22-cv-5183-DWC, 2022 WL 4131597 at *2 (W.D. Wash.

5  Sept. 12, 2022) (finding ALJ erred in determining that a psychiatrist opinion was

6  "unsupported by objective findings" when the doctor conducted a mental status

7  examination.)

8          The ALJ's conclusion that plaintiff's effort during Dr. Glassman's evaluation was

9  "questionable" is based on his own interpretation of that examination and, therefore, is also

10 not supported by substantial evidence.[3] *See Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th

11 Cir. 1999) (ALJ may not substitute his own interpretation of the medical evidence for the

12 opinion of medical professionals); *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000)

13 ("The principle that an ALJ should not substitute his lay opinion for the medical opinion

14 of experts is especially profound in a case involving a mental disability").

15         The ALJ's finding that Dr. Glassman's opinion was inconsistent with plaintiff's lack

16 of mental health treatment is not supported by the record or the law. AR 26. Dr. Glassman

17 considered plaintiff's lack of treatment in forming his opinion. AR 324. Moreover, the

18 Ninth Circuit has "criticized the use of a lack of treatment to reject mental complaints both

19 because mental illness is notoriously underreported and because it is a questionable

20 practice to chastise one with a mental impairment for the exercise of poor judgment in

21 seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-

22 300 (9th Cir. 1999) (internal quotation and citation omitted); *see also Dupree v. Astrue*,

23

24 _____

25 [3] The SSA argues the ALJ's decision is supported by a January 2016 "disability
   investigation indicat[ing] that plaintiff was functioning at a higher level than he alleged."
26 Doc. No. 24 at 7. However, the ALJ found this report "unpersuasive." AR 22. Moreover,
   the ALJ did not rely on this report in rejecting Dr. Glassman's opinion and the Court is
27 "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871,
28 874 (9th Cir. 2003).

No. C08-5211-KLS, 2009 WL 367203, at \*5 (W.D. Wash. Feb. 6, 2009) ("Nor does the Court find the ALJ's statement that there is little evidence in the record of plaintiff having sought and undergone treatment an adequate basis on which to reject those limitations, especially given that Dr. Essink appears to have been well aware of the lack of such treatment on plaintiff's part.").

The ALJ's error was not harmless. For example, Dr. Glassman opined that plaintiff had marked impairment in his capacity to: "understand and follow even simple instructions consistently . . . [and] maintain concentration, persistence, and pace." AR 327. The VE testified that a hypothetical individual "who can't follow even simple, repetitive instructions" or is "off task 15% or more of the workday" due to "concentration and persistence and pace issues" would not be able to maintain employment. AR 52. In contrast, the ALJ concluded plaintiff is "able to understand, remember, and carry out simple instructions and tasks . . . and respond appropriately to supervisors and coworkers in a task-oriented setting." AR 20-21. The Court, therefore, cannot conclude the ALJ's failure to properly consider Dr. Glassman's opinion was inconsequential to the disability determination. *See Sawyer v. Astrue*, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (ALJ's failure to properly consider medical opinions not harmless because error was "directly relevant to the ultimate issue" of the plaintiff's capacity for exertion.")

Here remand is required, at a minimum, in order for the ALJ to reevaluate the medical evidence. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) (remanding for further administrative proceedings where "outstanding issues" remained to be resolved and it was "not clear from the record that an [ALJ] would be required to find the claimant disabled and award disability benefits"); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court.")

//
//
//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.      *Conclusion*

Based on the foregoing, plaintiff's Motion for Summary Judgement is GRANTED [Doc. No. 21], defendant's Cross-Motion for Summary Judgment is DENIED [Doc. No. 24], and the case is REMANDED for further proceedings consistent with this Order.

IT IS SO ORDERED.

Dated:  September 1, 2023

Hon. Karen S. Crawford
United States Magistrate Judge

21cv385-KSC